Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 02 2013, 8:13 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) ) |
| S.B. (MINOR CHILD) AND W.G., (FATHER) | ) ) ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) ) ) No. 49A02-1208-JT-663 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner, | ) ) |
| and | ) ) ) |
| CHILD ADVOCATES, INC. | ) ) ) |
| Co-Appellee-Guardian ad Litem | ) |

April 2, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

W.G. ("Father") appeals the involuntary termination of his parental rights to his child, S.B. Father raises the following restated issue: whether there is sufficient evidence supporting the trial court's judgment terminating Father's parental rights.

We affirm.

**Facts and Procedural History**

On March 7, 2011, S.B. was born to Father and F.B. ("Mother"). Mother admitted to taking opiates, cocaine, and benzodiazepines while pregnant with S.B. Appellant App. p. 14. The facts most favorable to the judgment reveal that S.B. remained hospitalized for several weeks after his birth due to severe withdrawal from the narcotics Mother took during pregnancy. It was only in early May 2011, that S.B. was released from the hospital and into the care of his current foster parents. Father has been incarcerated throughout S.B.'s life.

On March 24, 2011, the Department of Child Services in Marion County ("MCDCS") filed a petition alleging that Mother was unable to provide S.B. with a safe and appropriate living environment free from substance abuse and that S.B. was a Child

In Need of Services ("CHINS"). Id. S.B. was so adjudicated following a hearing on March 24, 2011. Father was not given notice of this hearing, and he did not attend the hearing, as he was incarcerated. Because Father was incarcerated and did not appear at the hearing, he was not given any parenting time with S.B.

At the time of the juvenile court's pretrial hearing on April 14, 2011, MCDCS was still attempting to serve Father. Father was not present during a second pretrial hearing on May 4, 2011. During a third pretrial hearing on May 25, 2011, the court noted that the Public Defender's Agency had been appointed to represent Father, but an appearance had not been filed. The court scheduled another pretrial hearing for Father.

During the predisposition and pretrial hearing on June 15, 2011, Father was still absent due to his incarceration, but he was represented by a public defender ("PD"). The court proceeded with disposition as to Mother, but rescheduled another pretrial hearing for Father. Father was represented by his PD during a June 29, 2011 pretrial hearing. Father's PD indicated that he was still unable to contact Father and the court granted PD's request to reschedule the pretrial hearing. During a pretrial hearing on July 27, 2011, PD waived Father's right to a fact-finding hearing, and the matter proceeded to disposition. Ex. Vol., Pet. Ex. 11 p. 1.

During the juvenile court's periodic review hearing on September 7, 2011, Father was represented by a new PD. By the December 7, 2011 Placement and Jurisdiction Review hearing, Mother was starting to struggle with her plan. Father's PD again made an appearance on his behalf. As of December 7, 2011, reunification was still the objective. However, during the March 14, 2012 Permanency Hearing, adoption became

3

the new objective. At the time of this hearing, both Mother and Father were incarcerated. While Father was not present for this hearing, he was represented by a PD. On March 20, 2012, MCDCS filed a Petition for Involuntary Termination of the Parent-Child Relationship. Mother consented to the adoption of S.B.

The juvenile court held a Termination Hearing on July 10, 2012. Father participated telephonically. This was the first time he actively participated in any hearings in this matter. The hearing revealed that Father had never met S.B. Father was unaware of S.B.'s special needs. Father has six older children, yet he had not had any contact with those children in over a year. He could not remember S.B.'s birthday or the birthdays of several of his other children. He did not pay regular child support for his any of his other children. While Father testified that he regularly sent letters to his siblings and children, the MCDCS case manager ("Case Manager"), Chad Shewman, testified that while he had sent an initial letter to Father explaining that he was S.B.'s case manager. Father never responded. Tr. pp. 104-105. In fact, Father never made any attempt to contact him regarding S.B. Father has a lengthy criminal history that began when he was a juvenile, and he has been incarcerated at least eight different times as an adult. One of Father's other sons has also been in trouble with the law.

On July 18, 2012, the juvenile court ordered the termination of the parent-child relationship between Father and S.B. The court found that Father had never met S.B. or had any contact with S.B. At the time of the termination hearing, Father was still incarcerated. He never provided proof that he completed services while incarcerated. He did not have his own home and could not provide contact information for an employer

4

following his release.  The court found that termination of the parent-child relationship was in the best interests of S.B.

**Discussion and Decision**

We begin our review by acknowledging that when reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. In re D.D., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Where, as here, the juvenile court enters findings of fact and conclusions of law in its termination of parental rights, our standard of review is two-tiered. In re J.H., 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), trans. denied. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. In re C.G., 954 N.E.2d 910, 923 (Ind. 2011). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. C.G., 954 N.E.2d at 923.

The Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. Id. However, a juvenile court must subordinate the interests of the parents to those of the child when

5

evaluating the circumstances surrounding a request to terminate parental rights. In re

K.S., 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child

relationship is proper where the child's emotional and physical development is

threatened. Id.

A request to terminate a parent's rights is not made lightly, and before an

involuntary termination of parental rights may occur in Indiana, the State is required to

allege and prove, among other things:

> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii)   There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)    that termination is in the best interests of the child; and
>
> (D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "The State's burden of proof in termination of parental

rights cases is one of 'clear and convincing evidence.'" In re G.Y., 904 N.E.2d 1257,

1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). If the trial court finds that the

allegations in a petition described in section 4 of this chapter are true, the court shall

terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). Father challenges the

6

sufficiency of the evidence supporting the trial court's conclusions as to subsections (b)(2)(B) and (C) of the termination statute cited above. See I.C. § 31-35-2-4(b)(2).

## I.    Conditions Remedied

Initially, we observe that Indiana Code section 31-35-2-4(b)(2)(B) requires a trial court to find that only one of the three elements of subsection (b)(2)(B) has been established by clear and convincing evidence before properly terminating parental rights. See L.S., 717 N.E.2d at 209. Because we find it to be dispositive, we limit our review to Father's allegations of error pertaining to subsection (b)(2)(B)(i) of Indiana's termination statute, namely, whether MCDCS presented clear and convincing evidence establishing that there is a reasonable probability the conditions leading to the removal and continued placement of S.B. outside Father's care will not be remedied.

When making a determination as to whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied. The trial court may also consider any services

7

offered to the parent by the local Indiana Department of Child Services office (here, MCDCS) and the parent's response to those services, as evidence of whether conditions will be remedied. Id. Moreover, MCDCS is not required to provide evidence ruling out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. In re Kay L., 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

Father argues that although he was never asked to complete any services, he participated in a drug dependency program, anger management classes, and a prison Christian ministry. Father also claimed to have stable housing and employment waiting for him upon release. Father therefore contends that the trial court committed reversible error in terminating his parental rights.

However, the trial court made a number of detailed findings in its judgment terminating Father's parental rights to S.B. addressing, among other things, Father's history of substance abuse, chronic incarceration, and unresolved parenting issues. S.B.'s case manager testified that MCDCS did not offer services for Father because the court did not order services for Father. The court did not order services for Father because he was incarcerated. MCDCS typically does not send home-based counselors into prisons. Tr. p. 106. While Father claims to have completed services in prison, Father never provided the court with documentation or certificates for these programs. Father has been incarcerated at least eight different times as an adult. Despite previous participation in services while incarcerated, Father has continued to re-offend. The juvenile court found that, "[Father] has a repetitive and ongoing history of incarceration and chronic

8

substance abuse." Appellant App. p. 15. Father was incarcerated before S.B.'s birth for cocaine possession. Cocaine is one of the drugs that Mother ingested while she was pregnant with S.B.

The court further found that Father did not demonstrate the ability or willingness to parent. Although Mother and Father were married at the time of S.B.'s birth, Father is not listed on S.B.'s birth certificate. Father never made any effort to correct the birth certificate or to establish paternity. Father never met, parented, or cared for S.B. Father is unaware of S.B.'s needs. Father has no bond with S.B.; S.B. is bonded to his foster parents. S.B.'s foster parents are the only parents he has ever known. Finally, the court found that Father had never owned a home, secured stable housing, or provided any financial support to S.B. Id.

Based on these and other findings, the trial court concluded that there is a reasonable probability that the conditions that resulted in the removal and continued placement of S.B. outside of Father's care will not be remedied. A thorough review of the record leaves us satisfied that clear and convincing evidence supports the trial court's findings, and these findings, in turn, support the court's ultimate decision to terminate Father's parental rights to S.B.

As noted earlier, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. D.D., 804 N.E.2d at 266. A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth

9

is permanently impaired before terminating the parent-child relationship. In re E.S., 762 N.E.2d 1287 (Ind. Ct. App. 2002). Moreover, we have repeatedly recognized that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." Castro v. State Office of Family & Children, 842 N.E.2d 367, 375 (Ind. Ct. App. 2006), trans. denied. After reviewing the record, we conclude that MCDCS presented clear and convincing evidence to support the trial court's findings and ultimate determination that there is a reasonable probability the conditions leading to S.B.'s removal and/or continued placement outside of Father's care will not be remedied. Father's arguments to the contrary amount to an impermissible invitation to reweigh the evidence. See D.D., 804 N.E.2d at 265.

## II. Best Interests of the Child

The evidence in the record before us is more than sufficient to support the conclusion that termination of Father's parental rights is in S.B.'s best interests. Father's history of instability, substance abuse, and chronic incarceration all support termination of his parental rights. See Lang v. Starke County Officer of Family & Children, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007) ("A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the children."), trans. denied.

During the termination hearing, it was the overwhelming consensus of case managers and service providers that Father could not provide S.B. with a safe and stable home environment. Specifically, the family case manager, ("Case Manager") concluded

10

that the termination of Father's parental rights was in S.B.'s best interests and that S.B. would not benefit if the court gave Father more time to establish a relationship because at the time of the Termination Hearing S.B. was already sixteen months old. S.B. would be three and one half years old by the time Father was scheduled for release in September 2014. S.B. was bonded to his foster parents and his special needs are being met. S.B. needs permanency that Father cannot currently provide because he is in prison. The court further found that, "continuation of the parent-child relationship would deny permanency to [S.B.]." Appellant App. p. 16. See In re G.Y., 904 N.E.2d 1257, 1265 (Ind. 2009). S.B.'s Guardian ad Litem, ("GAL") testified that permanency is a central consideration in determining the best interests of a child. The GAL further testified that S.B. had a strong bond with his foster parents, and his special needs were being met. He could not recommend contact between S.B. and Father.

**Conclusion**

MCDCS presented clear and convincing evidence to support the juvenile court's findings and ultimate determination that there is a reasonable probability that the conditions leading to S.B.'s removal or continued placement outside Father's care will not be remedied. Furthermore, continuing the parent-child relationship would not be in S.B.'s best interest. For all of these reasons, we affirm the juvenile court.

Affirmed.

BAKER, J., and MAY, J., concur.